UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| NOVA U.S., INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-CV-635-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| ANGELA DISIMONE and | ) | **MEMORANDUM OPINION** |
| ANTHONY DISIMONE, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court presently considers whether to stay this case pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). On the Court's order [R. 40], the parties filed simultaneous briefs on the issue. [R. 41]; [R. 42]. For the reasons set forth below, the Court will stay this case pending resolution of the underlying state court action.

## I. BACKGROUND

On August 6, 2020, Plaintiff Nova U.S., Inc. ("Nova"), initiated this action against Defendants Angela and Anthony DiSimone ("the DiSimones") in Hardin Circuit Court in Hardin County, Kentucky, and the DiSimones timely removed the action to this Court. [R. 1].[1] On December 11, 2020, the Court granted Nova leave to file an Amended Complaint, and on December 16, 2020, the DiSimones filed their answer to same. *See* [R. 12]; [R. 13]; [R. 14]. Nova's Complaint[2] states as follows:

---

[1] The Notice of Removal provides that Nova is a Delaware Corporation with its principal place of business in Surrey, British Columbia, Canada, and that the DiSimones are both citizens of Florida. [R. 1, ¶¶ 8–10].

[2] Nova amended its original Complaint because it erroneously listed the date the Promissory Note was executed and delivered as January 10, 2010, instead of January 10, 2020. *See* [R. 10 (Motion to Amend), p. 1] ("Comes now Plaintiff, by counsel, and moves this Court for leave to file the attached first Amended Complaint, to correct a Scrivener's error relative to the date recited in paragraph no. 1 of Plaintiff's original Complaint."); *see also* [R. 13, p. 1] ("The remaining allegations set forth in Plaintiff's original Complaint

1. On January 10, 2020, the Defendants, Angela DiSimone and Anthony DiSimone, executed and delivered to the Plaintiff a Promissory Note in the principal amount of $150,000.00, plus interest at the contract rate. . . .

2. It is provided in the aforesaid Promissory Note that, upon default of any installment of payment due thereunder, the holder thereof may elect to declare the entire outstanding balance to be immediately due and payable. The Defendants, Angela DiSimone and Anthony DiSimone, have defaulted in their payments and the Plaintiff does hereby elect to declare the entire balance to be immediately due and payable There is currently due and owning the sum of $150,000.00, plus interest at the contract rate per annum from February 1, 2020, thereon, until paid in full.

[R. 13 (Amended Complaint), p. 1]; [R. 1-1 (Kentucky State Complaint), pp. 3–4]. Put simply, Nova alleges the DiSimones breached a Promissory Note ("the Note") in which the DiSimones agreed to repay Nova a $150,000.00 debt, plus interest. *See generally* [R. 1-1 (Kentucky State Complaint)]; [R. 13 (Amended Complaint)]. Nova therefore brought this action "to have [the Hardin Circuit Court] enter the Note's confession of judgment." [R. 42, p. 2]. In their Answer, the DiSimones deny Nova's allegations and their obligation to repay Nova under the Note, asserting as affirmative defenses fraudulent inducement, setoff, and prior pending action. *See* [R. 14, pp. 6–8].

Although the terms of the Note appear straightforward on their face, to paint a full picture, the Court must delve into the complex history underlying its execution. Nova is a subsidiary of Nova Pole International, Inc., *see* [R. 36 (Corporate Disclosure Statement)], and this litigation stems from the purchase of VSI Sales, LLC and Structures USA, LLC by Nova Pole. [R. 25-1, p. 2]. Prior to the purchase, Angela DiSimone was the sole member of VSI Sales and Structures USA, two companies formed to market, manufacture, and/or sell pole structures, such as "highway sign bridges and lighting poles." [R. 25-1, p. 2]; [R. 27, p. 2]. Anthony DiSimone, Angela's husband,

---

are hereby adopted as if fully set forth herein."). For clarity, the Court therefore refers to both Nova's original and Amended Complaint throughout this order.

worked for VSI as a design engineer and in sales and marketing. [R. 25-1, p. 2]; *see also* [R. 26-2, Ex. B, p. 21, 20:2–8].

Around April 2018, Nova Pole and Angela entered into negotiations for the sale of the assets of VSI Sales and Structures USA. [R. 25-1, p. 2]. To consummate the purchase, the parties executed a Contribution Agreement on June 29, 2018. *Id.*; *see also* [R. 25-3, Ex. C (Contribution Agreement)]. The parties to the Contribution Agreement were Angela, Nova, Nova Pole, and a newly formed holding company, Structures U.S., LLC (together, the "Nova Entities"). [R. 26-3, Ex. C, pp. 3–4]; *see also* [R. 27-2, pp. 2–3]. Pursuant to the Contribution Agreement, Angela contributed the entirety of her interests in VSI Sales and Structures USA to the newly formed Structures U.S. [R. 25-1, p. 2]. In exchange, Angela received $425,800.00 and a ten percent interest in Structures U.S. *Id.*; *see also* [R. 26-3, Ex. C, p. 9]. Nova Pole owned the remaining ninety percent of Structures U.S. [R. 26-3, Ex. C, p. 10 (Section 2.3(b))0].

In the Contribution Agreement, Angela made several representations and warranties to the Nova Entities. *Id.* at 10–23. In Section 3.1(i), Angela warranted that the provided financial statements fairly presented the financial position of VSI Sales and Structures USA as of the date thereof. *Id.* at 11. In Section 3.1(j), she warranted that, aside from those otherwise disclosed, VSI Sales and Structures USA had no outstanding indebtedness or any liabilities or obligations. *Id.* at 12. Additionally, Angela warranted that the statements contained in Section 3.1 were true and correct as of the date of the agreement, except as set forth in the disclosure schedule accompanying the agreement. *Id.* at 10.

In Section 10.1(a), Angela covenanted and agreed to indemnify the Nova Entities for "all liabilities, claims, demands, actions, causes of action, damages, costs and expenses (including reasonable legal expenses)" incurred, among other reasons, for "any breach of the representations

and warranties of DiSimone contained in Section 3.1 of this Agreement." *Id.* at 29. To secure the indemnity obligations in Section 10.1, Angela granted Structures U.S. a "right of offset" of up to $150,000. *Id.* at 10. Under the terms of the Contribution Agreement, if Structures U.S. made an indemnity claim against Angela during the 120-day offset period after the closing date, and she failed to pay the claim within thirty days after final determination of the amount owed, Structures U.S. could seek an offset in the amount of the unpaid claim (up to $150,000) against the DiSimone Capital Account. *Id.*

The Contribution Agreement also contained certain release and indemnification obligations of Structures U.S. Specifically, Section 7.6 of the Contribution Agreement, titled "Release of Guarantee Obligations," provides:

> As soon as commercially practical after the Closing Date, [Structures U.S.] shall take all commercially reasonable steps to cause both DiSimone and Anthony to be unconditionally and fully released from any and all indemnity obligations that either DiSimone or Anthony have with respect to either of the LLCs or their respective obligations (the "Personal Guarantees") including, without limitation the personal guarantees listed in Schedule Y.

*Id.* at 27. Further, Section 10.3(b) of the Contribution Agreement, titled "Indemnification Obligations of Nova Pole," states:

> Subject to the limitations set out in Section 10.4, Nova Pole covenants and agrees to indemnify and hold [Structures U.S.] and DiSimone harmless against all Indemnity Claims suffered or incurred by [Structures U.S.] or DiSimone, as applicable, as a direct result of a material breach of any agreement, term or covenant on the part of that DiSimone (excluding breaches or representations and warranties covered by Section 10.3(a) above) made or to be observed or performed under this Agreement.

*Id.* at 30.

Structures U.S.'s indemnity obligation included a debt VSI owed Sabre Tubular Structures PA, LLC (the "Sabre Debt"). [R. 25-1, p. 6]. The debt arose as part of a settlement between VSI and Sabre (the "Sabre Settlement"), whereby VSI agreed to pay Sabre $300,000 on or before

December 31, 2018. *Id.* The DiSimones personally guaranteed the Sabre Settlement. *Id.*; *see also* [R. 26-7, Ex. G, p. 2]; [R. 27-1, p. 3, ¶ 22].

On October 25, 2018, Nova Pole's President and Chief Executive Officer, Sandra Atkins, sent Angela a formal Notice that it had discovered numerous breaches of the representations and warranties in the Contribution Agreement. [R. 25-1, p. 4]; *see also* [R. 26-4, Ex. D (Notice)]. The Notice, among other things, alleged an undisclosed $925,792.18 decline in the financial condition of VSI Sales and Structures USA. *Id.*; *see also* [R. 26-4, Ex. D, p. 3]. Prior to the Notice, however, the Nova Entities also became aware of two additional alleged breaches: (1) an undisclosed threatened litigation with Maico Industries, Inc. regarding a $278,510.30 debt owed by VSI, and (2) an undisclosed $62,730.99 debt owed to Summit Utility Structures, LLC by VSI. [R. 25-1, pp. 5–6]. Angela disputes these alleged breaches of the representations and warranties.

Based on the alleged breaches of the Contribution Agreement, the Nova Entities informed the DiSimones that they had no intention of paying the Sabre Debt. [R. 25-1, p. 7]. Based on the parties' genuine dispute as to payment of the Sabre Debt, they entered negotiations, which, on January 10, 2020, resulted in the execution of the Promissory Note at the heart of this litigation. *Id.* at 8; *see also* [R. 27, p. 10].[3] Under the terms of the Note, Nova loaned the DiSimones $150,000.00 to pay a portion of the Sabre Debt. [R. 13-1 (Promissory Note)]. The DiSimones agreed to repay Nova in monthly installments of $6,250.00 beginning on February 1, 2020. *Id.* The Note provided that "[t]he whole of the principal sum and accrued interest shall become due at the option of Nova after a default of any installment, if the default is not cured within 30 days after written notice specifying the default is delivered to Maker." *Id.* at 3. In addition, the Note contained

---

[3] Prior to the Note, the parties drafted a Settlement Agreement and Mutual Release ("SAMR"). *See* [R. 27-11]. However, the SAMR was never executed, as the DiSimones declined to sign it when they realized it did not contain "a general release," but "was limited to the Sabre Settlement[.]" [R. 27-1, p. 11, ¶¶ 92–96].

a choice of law provision, which stated that the Note and "the rights and obligations of the parties hereto" shall be governed by the laws of the Commonwealth of Kentucky. *Id.* at 2. However, the Note contained no information about the Sabre Debt or the underlying Contribution Agreement. *See id.* at 1–4.

Prior to and at the time of the Note's execution, both Angela and Anthony were working for the Nova Entities. However, shortly after executing the Note, the Nova Entities terminated their employment. *See* [R. 26-1, Ex. A, p. 114, 112:13–25]; [R. 26-2, Ex. B, p. 94, 93:10–21]; [R. 27, pp. 10–11]. Nonetheless, pursuant to the terms of the Note, Nova paid $150,000.00 toward the Sabre Debt and the DiSimones paid the remaining $180,000.00. [R. 25-1, p. 9]; *see also* [R. 26-1, Ex. A, p. 123, 121:2–8]. However, the DiSimones never made any payments to Nova on the Note. [R. 26-9, Ex. I, p. 6]. On March 11, 2020, Nova sent the DiSimones an email notifying them of their default and providing thirty days to cure. [R. 1-1, pp. 10–11]. The DiSimones did not cure. Consequently, as stated, Nova initiated this action against the DiSimones in Hardin Circuit Court on August 6, 2020, alleging breach of the Note. [R. 1-1, pp. 3–4]. On September 8, 2020, the DiSimones removed the case to this Court based on diversity jurisdiction. [R. 1].

But the relevant procedural history between Nova and the DiSimones does not end there. Before bringing this federal action, on January 23, 2020, Structures U.S., VSI Sales, and Structures USA sued Anthony DiSimone and Engineered Pole Structures, LLC[4] in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See generally Structures U.S.,*

---

[4] The Florida state Complaint provides that Engineered Pole Structures "is a Florida limited liability company which was formed on November 16, 2018" by the DiSimones, who "are the members and owners of Engineer Pole, although the public records reflect that Mr. DiSomone [sic] is the 'manager' of Engineered Pole." *Structures U.S., LLC et al. v. Anthony DiSimone et al.*, Case No. CACE-20-001279 (Fl. Cir. Ct. 2022) (Complaint).

*LLC et al. v. Anthony DiSimone et al.*, Case No. CACE-20-001279 (Fl. Cir. Ct. 2022). That action

initially centered on various business and employment disputes unrelated to this federal action.

Several months later, but still before Nova brought this action in Hardin Circuit Court, on

June 5, 2020, VSI Sales sued Anthony DiSimone in the United States District Court for the

Southern District of Florida. *See generally VSI Sales, LLC v. Anthony DiSimone, et al.*, Case No.

0:20-cv-61119-RNS (S.D. Fl. 2020). Shortly after Anthony filed his answer and affirmative

defenses on July 1, 2020, VSI Sales amended its complaint on September 11, 2020, adding

Structures U.S. and Structures USA as plaintiffs and Angela DiSimone and Engineered Pole

Structures, LLC as defendants, and asserting additional factual allegations and claims. *See id.* On

September 21, 2020, thirteen days after the DiSimones removed this action from Hardin Circuit

Court, Anthony answered the amended complaint and brought counterclaims in the Southern

District of Florida against the original plaintiffs, Nova, and Nova Pole.[5] *See* [R. 26-10, pp. 16–25].

In his factual narrative, Anthony referenced, for the first time, the Contribution Agreement, the

Sabre Settlement and Debt, and the Note. *Id.*

The Florida federal action, at its core an employment dispute "about whether employees of

one business started a side business to compete with their employer," [R. 31-1, Ex. A, p. 5],

involved many of the same business and contractual disputes as the Florida state action, including

those between Nova and the DiSimones over their obligations under the Contribution Agreement.

*Id.* at 3–5. Of note, in that action, Nova and the DiSimones "dispute[d] whether the Promissory

---

[5] The Court observes, here, that Anthony failed to file a third-party complaint to properly bring Nova and Nova Pole into the Florida federal action. *See generally* Fed. R. Civ. P. 14. However, neither Nova nor Nova Pole raised this issue to the Florida federal court, and the parties have never disputed whether Nova is a proper party to either Florida action. Moreover, ultimately Nova was properly added as a plaintiff in the Florida state action, *see* [R. 14-1 (Second Amended Complaint in Florida State Court)], and Nova has now been actively participating in the Florida actions for more than three years. This Court, accordingly, treats Nova as a proper party to the Florida state action, the only live action remaining between the parties in Florida.

Note[] fully resolved the underlying obligations and duties under the Contribution Agreement," and asserted counterclaims against Nova for fraudulent inducement. [R. 31-1, Ex. A, p. 5]. Apparently recognizing the duplicative nature of the two Florida proceedings, all parties to the Florida state action agreed to stay that case and litigate their claims and counterclaims in the Florida federal action. [R. 41, p. 3].

Ultimately, the Southern District of Florida granted partial summary judgment in favor of the DiSimones on February 9, 2022. *See generally* [R. 31-1, Ex. A (Florida Summary Judgment Order)]. Of note, the court, in addressing the parties' cross-motions for summary judgment, opined:

> The undisputed facts show that there was some contractual relationship between Plaintiffs and Defendants regarding the release of personal guarantees as outlined in the contribution Agreement and subsequent agreements to resolve those personal guarantees. Factual questions remain as to the terms of the parties' contractual relationship and whether those terms are breached.

*Id.* at 26–27. Having disposed of all federal claims on summary judgment, the court declined to exercise supplemental jurisdiction over the claims and counterclaims that remained, including the DiSimones' claim against Nova for fraudulent inducement. *See generally* [R. 32-1, Ex. A (Florida Dismissal Order)]. The parties therefore commenced litigating in the Florida state court. Accordingly, on August 16, 2022, the plaintiffs in the Florida state action, now including Nova, filed a second amended complaint against the DiSimones, Engineered Pole Structures, Steven C. Scott, and Jay Allman. *See* [R. 14-1 (Second Amended Complaint in Florida State Court)]. On August 24, 2022, the defendants filed their answer to the plaintiffs' second amended complaint, asserting both affirmative defenses and counterclaims. *See generally* [R. 14-2 (Answer to Second Amended Complaint in Florida State Court)].

The plaintiffs' claims against the DiSimones in the Florida state action now include breach of fiduciary duty (Count I), breach of contract related to an operating agreement (Count II) and with respect to the Contribution Agreement (Count XIII), misappropriation and conversion of company assets (Count III), tortious interference with business and contractual relations (Counts IV and XI), tortious interference with operating agreement (Count V), accounting (Count VI), unjust enrichment (Count XII), and fraud and fraudulent inducement (Count XIV). [R. 41-1 (Second Amended Complaint in Florida State Court), pp. 6–20].

The DiSimones' counterclaims against Nova in that action include fraudulent inducement (Count III) and setoff (Count IV). [R. 14-1 (Answer to Second Amended Complaint in Florida State Court), pp. 24–26]. The DiSimones also allege breach of the Contribution Agreement against Structures U.S. (Count I) and indemnification against VSI Sales (Count II). *Id.* at 23–24. The factual allegations set forth in the DiSimones' Counterclaim include, as relevant here:

> 44. Notwithstanding the obligations under the Contribution Agreement and common law, Nova Pole, Nova US, Structure US, and VSI Sales all refused to pay the obligations incurred by VSI Sales as a result of the Sabre Settlement.
>
> 45. In order to avoid execution upon property, Anthony and Angela were forced to discuss and negotiate a resolution with Sabre whereby they would pay $330,000.00 to settle the dispute.
>
> 46. Pursuant to discussions with Nova US, Nova Pole, Structures US, and VSI Sales, a potential resolution was addressed whereby Nova US would pay $150,000.00 of the $330,000.00 settlement in exchange for a Promissory Note.
>
> 47. However, as the obligation was an obligation incurred by VSI Sales under the Contribution Agreement and was subject to indemnification, the Counterclaim Defendants utilized economic duress to attempt to force Anthony and Angela to release any claims under the Contribution Agreement, to pay $180,000.00 to Sabre, and to incur a $150,000.00 obligation to Nova US pursuant to the Promissory Note, in order to settle the dispute with Sabre. The Counterclaim Defendants also misrepresented that the agreement would settle numerous issues and release all claims between the parties relating to the Contribution Agreement.

48. At the same time Nova US, Nova Pole, Structures US, and VSI Sales were coercing Anthony and Angela to enter into the Promissory Note and potential settlement, they knew that they intended to terminate Anthony and Angela's employment and proceed with the filing of a lawsuit against Anthony and Angela in Florida.

49. Anthony and Angela did not sign the Settlement Agreement proposed by Nova US, VSI Sales, and Nova Pole because it did not include the agreed upon release.

50. Had Anthony and Angela been advised or made aware that Structures US, VSI Sales, and [Structures USA] intended to terminate them and file an action against them in Florida at the same time they were seeking a release of claims that did not include a full release of claims under the Contribution Agreement, Anthony and Angela would not have entered into the Promissory Note.

51. Further, the Promissory Note is subject to an offset for claims Anthony and Angela have against Nova US' affiliated entities: Nova Pole, VSI Sales, Structures US, and [Structures USA].

*Id.* at 22–23.

In light of the related, ongoing Florida state action, the DiSimones suggest the Court should stay this action under the *Colorado River* abstention doctrine. [R. 41, p. 1]. Nova disagrees and urges the Court not to abstain from deciding this case. [R. 42, p. 1].

## II. ANALYSIS

### A. *Colorado River*

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River*, 424 U.S. at 817. Generally speaking, parallel proceedings in state court do not detract from this "unflagging obligation." *Id.* Indeed, the Court's "jurisdiction, when it applies, normally is peremptory." *Nationwide Mut. Ins. Co. v. Knott Cnty. Water & Sewer Dist.*, 600 F. Supp. 3d 710, 712 (E.D. Ky. 2022). Nevertheless, "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (discussing *Colorado River*). In other words, despite its obligation to exercise jurisdiction,

- 10 -

a federal district court has some discretion to stay or dismiss a case under certain circumstances, such as where there exists a related and ongoing state court lawsuit. These principles are embodied in the *Colorado River* abstention doctrine. This doctrine allows a federal district court to stay a lawsuit if there is a substantially similar parallel state court proceeding underway and the federal litigation would be duplicative or unwise. *See Colo. River*, 424 U.S. at 817; *Bates v. Van Buren Twp.*, 122 F. App'x 803, 809 (6th Cir. 2004).

"The *Colorado River* abstention doctrine recognizes that for a federal court 'and the state court to focus simultaneously on the same issue would be a waste of limited judicial resources.'" *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 929 (N.D. Ohio 2021) (quoting *Red Roof Inns, Inc. v. A.C. Furniture Co.*, No. 2:10-CV-525, 2012 WL 628541, at *6 (S.D. Ohio)). "Simultaneous litigation is especially unnecessary and wasteful when the state court litigation is sufficiently advanced that it likely will reach a final judgment in time to preclude further litigation of the same issues in the federal action." *Id.* (citations omitted). Even so, application of this doctrine "is appropriate only when: (1) the state and federal proceedings are parallel and (2) *Colorado River*'s eight factors weigh in favor of abstention." *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *2 (6th Cir. Aug. 2, 2022) (citing *Romine*, 160 F.3d at 340–41). Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . . (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Walker v. Louisville/Jefferson Cnty. Metro Gov't*, 583 F. Supp. 3d 887, 899 (W.D. Ky. 2022) (citing *Romine*, 160 F.3d at 340–41). "No one factor is necessarily determinative," *Colo. River*, 424 U.S. at 818, and the factors "do not comprise a mechanical checklist," *Romine*, 160 F.3d at

341. Rather, the Court must apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983).

If these criteria are satisfied, the district court may stay, rather than dismiss, the federal proceeding pending resolution of the state matter. *See Bates*, 122 F. App'x at 809 ("We conclude that a stay is the best way to effectuate *Colorado River* abstention. . . . We therefore join other circuits in requiring a stay of proceedings rather than a dismissal in *Colorado River* abstention cases."). Notwithstanding, "extraordinary circumstances" must exist to warrant abstention under the *Colorado River* doctrine. *See generally Colo. River*, 424 U.S. at 813 (explaining that abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it").

### i.      Parallelism

As stated, the threshold issue is whether the state and federal proceedings are parallel. *See Novak*, 2022 WL 3046973, at *2; *Romine*, 160 F.3d at 339 (citing *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28 (6th Cir. 1984)) ("Before the *Colorado River* doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel."). To be considered parallel, the actions must involve "substantially the same parties contemporaneously litigating substantially the same issues, and the critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Seyi-Am., Inc. v. Stamtec, Inc.*, No. 3-13-0461, 2013 WL 6096794, at *3 (M.D. Tenn. 2013) (cleaned up) (citations omitted); *see also Minette v. Minette*, 162 F. Supp. 3d 643, 654 (S.D. Ohio 2016) (citing *Romine*, 160 F.3d at 339–40) (explaining the *Colorado River* abstention doctrine "applies when there are parallel actions in federal and state court, such that the two actions

- 12 -

involve substantially the same parties litigating substantially the same issues"). "Full identicality is not required, but the state and federal cases must involve substantial duplication of parties and interests." *Nationwide*, 600 F. Supp. 3d at 712.

For purposes of parallelism, the Court therefore considers the similarity of both the parties and the claims and issues present in each action. First, "it is not necessary that the parties be identical," but, as stated, there must be "substantial duplication of parties[.]" *Nationwide*, 600 F. Supp. 3d at 712. While the Florida state action involves additional plaintiffs and defendants, all parties before this Court (i.e., Nova and the DiSimones) are also parties to the Florida state action. *Compare* [R. 1-1, p. 3], *with Structures U.S., LLC et al. v. Anthony DiSimone et al.*, Case No. CACE20001279 (Fl. Cir. Ct. 2022) (Second Amended Complaint). Beyond just that, their posture is the same in both actions, as Nova is a plaintiff in both the Florida state action and this federal action, and the DiSimones are defendants. It is plain, therefore, that the parties between the Florida state action and this federal action are substantially similar. *See Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 614 (E.D. Ky. 2010) ("Generally, parallel proceedings involve the *same* plaintiff against the *same* defendant, although the presence of additional parties in one suit but not the other will not necessarily destroy parallelism.") (emphasis in original); *RRI Assocs. LLC v. Huntington Way Assocs., LLC*, No. 2:22-CV-3273, 2023 WL 2445589, at *2 (S.D. Ohio Mar. 10, 2023) (citation omitted) (finding parallelism where "[e]very party in this [federal] case is also a party in the [state] Action" and noting, "even if 'the state suit includes parties and claims beyond those in the federal suit . . . such differences will not upset an otherwise substantial symmetry between the federal and state action'"). Nova even concedes this point and argues, instead, that the claims and issues are not sufficiently similar for the Court to find parallelism. *See*

[R. 42, p. 7] ("The federal and state actions are between the same parties but address [] entirely different claims.").

The Court therefore turns to the similarity of the claims and issues within the two actions. Again, in addition to "substantial duplication of parties," for actions to be parallel, there must also be "substantial duplication of . . . interests." *Nationwide*, 600 F. Supp. 3d at 712. On this point, Nova suggests the Florida state action and this federal action are not parallel because Nova "has no claims for breach of the Note in the State Action" and "properly alleged and brought that claim in the Commonwealth of Kentucky." [R. 42, p. 7]. Nova insists that because "there exists no claim for enforcement of the Note" in the Florida state action, "these actions are not parallel." *Id.*

For their part, the DiSimones submit that "this case is clearly parallel to the Florida State Action," as the "[i]ssues raised herein and also pending in the Florida State Action are interrelated." [R. 41, p. 6]. More specifically, the DiSimones note that "[i]n the Florida State Action, the Defendants have filed a claim against Structures U.S. for breach of the Contribution Agreement" and "have asserted a claim against VSI Sales for indemnity due to its failure to pay the obligation under the Sabre Settlement," "a claim for fraudulent inducement against VSI Sales, Structures U.S., SUSA, Nova Pole, and Nova U.S.," and "a claim for setoff based on the Promissory Note at issue herein." *Id.* at 7. The DiSimones also explain that in the Florida state action, plaintiffs Structures U.S. and VSI Sales have raised many of the same issues as those raised in Nova's summary judgment motion filed in this federal action, including accord and satisfaction, in opposing the defendants' summary judgment motion in the Florida state action. *Id.* at 8.

Upon independent review, the Court agrees with the DiSimones that there is "substantial duplication" of claims and issues between the two actions sufficient to satisfy parallelism. The sole issue of dispute in this federal action—whether the DiSimones must repay Nova pursuant to the

terms of the Note—has also been raised in the Florida state action. But unlike in this action, the Florida state court has the benefit of a full picture of the disputes between the numerous entity and individual parties, including Nova and the DiSimones, and considers the Note within the broader context of their various business and employment relationships, the facts surrounding the Sabre Settlement and Debt, and the terms of the Contribution Agreement. Indeed, the parties to both actions are disputing the enforceability of the Note, but in the Florida state action, they address head on the Note's effect on Nova's and Structures U.S.'s indemnity obligations with respect to the Sabre Debt under the Contribution Agreement. *Compare* [R. 1]; [R. 25]; [R. 26]; [R. 27]; [R. 30], *with Structures U.S.*, Case No. CACE20001279 (Answer and Counterclaim). And in both proceedings, the DiSimones contest their own obligations under the Note by alleging fraudulent inducement and setoff. *Compare* [R. 14 (Answer), pp. 6–8], *with* [R. 14-2 (Answer to Second Amended Complaint in Florida State Court), pp. 22–23] ("Had Anthony and Angela been advised or made aware that Structures US, VSI Sales, and [Structures USA] intended to terminate them and file an action against them in Florida at the same time they were seeking a release of claims that did not include a full release of claims under the Contribution Agreement, Anthony and Angela would not have entered into the Promissory Note.").

Put simply, while Nova seeks only to enforce the Note in this federal action, a threshold issue sits before the Florida state court: whether any indemnity agreements or other asserted defenses may relieve the DiSimones of their obligation to repay Nova for the Sabre Debt, which serves as the basis of the Note. *See, e.g.*, *Blake v. Wells Fargo Bank, NA*, 917 F. Supp. 2d 732, 737 (S.D. Ohio 2013) (finding parallelism between state foreclosure action where bank sought "to enforce [a] note and mortgage that Plaintiff [was] trying to rescind in [the federal] case" and where plaintiff asserted Truth in Lending Act (TILA) claims "as counterclaims in the state-court

foreclosure action" and "alleged TILA violations as a defense to foreclosure" in both actions); *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 393–94 (6th Cir. 2017) (cleaned up) (affirming district court's *Colorado River* stay and explaining that "where the parties are identical save for two defendants in the state action excluded from this federal counterpart, and where both suits turn on the same legal question," parallelism is "clearly met").

Importantly, and in other words, the Florida state court will squarely consider the DiSimones' claims of fraudulent inducement and setoff, as well as the validity of contractual relationships between the DiSimones and other parties to the Florida state action, to then determine whether the DiSimones are obligated to repay Nova for the relevant portion of the Sabre Debt. Still, Nova suggests parallelism is lacking because it has "no claim for enforcement of the Note" in the Florida state action. [R. 42, p. 7]. This contention simply ignores the fact that the underlying issues in the Florida state action are outcome determinative of the Note's enforceability here. The Supreme Court has clarified that a stay under *Colorado River* is appropriate when it would allow for a "quick and prompt resolution between the parties," such that the federal court "will have nothing further to do in resolving any *substantive* part of the case[.]" *Moses*, 460 U.S. at 23–26 (emphasis added); *see also Wright*, 782 F. Supp. 2d at 603 ("If a state court action and a federal action are truly parallel, resolution of the state court action will also resolve all issues in the federal action.").

Indeed, once the Florida state court resolves the substantive issues surrounding the Note, the Contribution Agreement, and the Sabre Debt (namely, as relevant here, whether the DiSimones are obligated to repay Nova under the terms of the Note), all that will be left for this Court to do is enter judgment consistent with the Florida state court's ruling (i.e., either enforcing the Note if it finds in Nova's favor or dismissing this case with prejudice if it finds in the DiSimones' favor)

under principles of *res judicata*. *See RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 556 (6th Cir. 2013) (internal citation and quotation marks omitted) (considering the court's jurisdiction under 28 U.S.C. § 1291 and explaining that "[s]tay orders based on *Colorado River* effectively end the litigation in federal court, because the district court would be bound, as a matter of *res judicata*, to honor the state court's judgment."); *see also Emerald Logistics, Inc. v. Crutcher*, No. 2:07-CV-1112, 2008 WL 3926441, at *4 (S.D. Ohio Aug. 25, 2008) (citing *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281 (1970) ("It would be especially wasteful to simultaneously litigate this dispute in two forums considering that the [state] court will almost certainly render a judgment first and thereby deprive this Court of jurisdiction to resolve the matter because of res judicata."). Accordingly, there is "a substantial likelihood that the state litigation will dispose of all claims presented" in this case, *Capitol Wholesale Fence Co. v. Lumber One Wood Preserving, LLC*, No. 3:13-CV-00521, 2014 WL 7336236, at *3 (M.D. Tenn. Dec. 22, 2014), and there will be no substantive issues left for the Court to consider once the Florida state action concludes.

Interestingly, in its motion for summary judgment, Nova admits "[t]he Counterclaim asserted in the Florida Litigation is substantially similar to the defenses asserted in the Answer [in this action] asserting claims for Indemnification on the Sabre Debt and Setoff of the amounts Defendants paid to settle the Sabre Debt," and notes "[t]he primary difference between the two pleadings is that the Florida Counterclaim alleges Structures breached the Agreement by failing to pay the Sabre debt and secure Defendants' release from their personal obligations under the Sabre Settlement." [R. 25-1, p. 10].[6] Indeed, as just mentioned, the Florida state court has additional

---

[6] Of note, Nova also acknowledges the similarities between the two cases at other points in its summary judgment motion. *See* [R. 25-1, p. 15] ("Defendants' Answer and Florida Litigation Counterclaim directly and passively allege they were coerced to enter into the Note. (DN 14) and Ex. J, *Florida Counterclaim*. . . . Defendants' Answer and Florida Litigation Counterclaim also allege they were fraudulently induced to

allegations and claims to consider with respect to the Note and the Sabre Debt because that litigation is more comprehensive. But this fact does not defeat parallelism and, in fact, may counsel in favor of abstention. *See Romine*, 160 F.3d at 340 (finding actions parallel where "the state action is actually more comprehensive than the consolidated federal cases"); *Bates*, 122 F. App'x at 807 (citation omitted) ("The fact that the state action is broader than the federal is no bar to *Colorado River* abstention, because this fact can only make it more likely that it will not be necessary for the federal courts to determine the federal question."); *Preferred Care of Delaware*, 676 F. App'x at 394 (citation omitted) ("Even if . . . the state suit includes parties and claims beyond those in the federal suit, this court has nonetheless held that such differences will not upset an otherwise substantial symmetry between a federal and state action."); *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1061 (E.D. Mich. 2011) ("[A]s *Colorado River Water* itself illustrates, the classic case of piecemeal litigation exists where the state court suit is more comprehensive than the federal suit. . . . Under such a scenario, the federal court would duplicate state-court efforts yet resolve only a 'piece' of a larger dispute, whereas the state court would resolve the entire case.").

Along the same lines, the Court is convinced, upon review of cases where courts found parallelism lacking, that the commonality of parties and claims between this federal action and the Florida state action is sufficient for purposes of *Colorado River* abstention. For example, in *180 Industrial, LLC v. Brunner Firm Co., LPA*, the Southern District of Ohio found parallelism was lacking where two parties to the federal action were not parties to the state action, and "almost all of the claims arise out of a common nucleus of operative facts," but "different operative facts support [two of the federal claims], no relief [was] being sought in state court [on those claims],

---

enter into the Note because had they known Nova US 'and its related entities were going to terminate their employment and file an[] action against them in Florida [they] would not have entered into the Promissory Note.' (DN 14 at 6); *See also*, Ex. J, *Florida Counterclaim*.").

and no decision of the state court" would resolve or preclude them in the federal action. No. 2:17-CV-937, 2018 WL 11432484, at *5 (S.D. Ohio Dec. 17, 2018) (emphasis in original). Similarly, in *PNC Bank, National Association v. M.T. Person, III, et al.*, on which Nova relies in its brief, a court in this district found two related cases were not parallel because some of the plaintiff's "claims for recovery" under a Note and Line of Credit Guaranty were "asserted only in [the federal] case and [were] *not at issue in the state proceeding*" and, accordingly, the court found that "the state-court action [would] clearly not dispose of all the claims presented in this case." No. CIV-A-06-292-C, 2007 WL 1423744, at *4 (W.D. Ky. May 8, 2007) (emphasis added).

Here, in contrast, the parties to this action are not only parties to the Florida state action, but their posture is the same in each (Nova a plaintiff, and the DiSimones defendants). And, as thoroughly discussed above, all claims and issues in this federal litigation also lie at the heart of the Florida state action. Unlike in *PNC Bank*, where the claims in state court did not implicate the Note and Line of Credit Guaranty at issue in the federal case, those in the Florida state action have heavy (indeed, dispositive) implications on the Note Nova seeks to enforce in this federal action. Sure, Nova seeks only to enforce the Note in this action, as was the case in *PNC Bank*, but threshold issues related to the Note's enforceability are before the Florida state court (a wrench not thrown into the *PNC Bank* facts). Further distinguishable is *Kopacz v. Hopkinsville Surface & Storm Water Utility*, which Nova also cites in its brief, where another court in this district found parallelism lacking even though "the parties [were] nearly identical and the cases [arose] from largely the same facts," because several claims in the federal action "related to . . . different [] facts and evidence required to establish" any of the common law claims present in the state action. 714 F. Supp. 2d 682, 688 (W.D. Ky. 2010). Such is not the case here; rather, the more comprehensive facts and evidence related to the Florida state action are directly relevant to Nova's sole claim for

enforcement and the DiSimones' defenses in this action. Considering both the parties and the claims at issue in the Florida state action and this federal action, the actions are clearly parallel.

Lastly on parallelism, Nova suggests that a stay under *Colorado River* "would vitiate the Note's forum selection clause and force Nova to litigate Defendants' Kentucky state law claim in [] Florida without any path to litigate its own Kentucky state law claim under the Note." [R. 42, p. 8]. But for the reasons discussed above, the Court disagrees, as Nova will not be without a remedy to enforce the Note if the Florida state court decides the underlying issues in its favor. In addition, the Court has serious concern over the Note's purported forum selection clause. The Note contains the following clause, which Nova suggests is a forum selection clause:

> Upon the occurrence of an event of default as set forth in the loan agreement or a default in payment under this Note, the Maker does hereby empower the Clerk of Courts or any attorney of any court of record within the Commonwealth to appear for Maker and, with or without one or more complaints filed, confess judgment or judgments against Maker in any court of record within the Commonwealth of Kentucky at any time after the date of this Note[.]

[R. 26-8 (Note), p. 2]. Setting aside issues related to the enforceability of this clause under Kentucky law,[7] the Court has serious doubt that this clause constitutes a valid forum selection clause. The clause does not state that suits arising under the Note must be brought in Kentucky. *See* Wright & Miller, Fed. Prac. and Proc. § 3803.1 (4th ed. 2023) (referring to a forum selection clause as a "[c]ontractual provision purporting to govern where a suit may be brought"). And as discussed further below, the Court is not convinced the Note otherwise contains a forum selection

---

[7] Under Kentucky law, "[e]xcept as provided in KRS 457.150," which governs provisions relieving an agent of liability for breach of duty, "any power of attorney to confess judgment or to suffer judgment to pass by default or otherwise, and any release of errors, given before an action is instituted, is void." Ky. Rev. Stat. Ann. § 372.140. The Kentucky Court of Appeals has explained that "KRS 372.140 is intended to prevent cognovit clauses in contracts giving creditors the authority to, at some later date, confess a judgment against a debtor without giving him or her the opportunity to defend." *Ashland Armco Emps. Credit Union v. Cantrell*, 685 S.W.2d 559, 560 (Ky. Ct. App. 1984) (citing *Ward and Johnson v. Curcier*, 11 Ky. (1 Litt.) 202, 205 (1822)); *see also* 5 Ky. Prac. Methods of Prac. § 38:19 (2023) (discussing the history of cognovit judgments in Kentucky).

clause; rather, the other language Nova refers to is clearly a choice-of-law provision. *See* [R. 26-8 (Promissory Note), p. 2] ("This Note and any other documents delivered in connection herewith and the rights and obligations of the parties hereto and thereto shall for all purposes be governed by and construed and enforced in accordance with the substantive law of the Commonwealth of Kentucky without giving effect to the principles of conflict of laws."). *See generally* Restatement (Second) of Conflict of Laws 187 (2023) (discussing choice-of-law provisions generally).

For all these reasons, the Court finds that the Florida state action and this federal action are parallel for purposes of *Colorado River* abstention, and Nova has presented no convincing arguments to the contrary.

### ii.   *Colorado River* Factors

Having found that the Florida state action and this federal action are parallel, the Court next considers whether the *Colorado River* factors signal that abstention is appropriate. "These factors are not a checklist, but rather considerations for the Court when using its discretion to abstain in a matter." *Atkins v. CGI Techs. & Sols., Inc.*, 339 F. Supp. 3d 619, 632 (E.D. Ky. 2018).

The first factor, whether the state court has assumed jurisdiction over any res or property, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), weighs against abstention, as there is no real property involved in either litigation. *See RRI Assocs.*, 2023 WL 2445589, at *4 (citing *Romine*, 160 F.3d at 341) ("[W]here no property is at issue, the first factor is inapposite and supports exercising jurisdiction[.]"); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 207 (6th Cir. 2001) ("The first factor supports federal jurisdiction because the state court did not assume jurisdiction over any res or property.").

Second, considering whether the federal forum is less convenient to the parties, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), the Court finds that this factor weighs

slightly in favor of abstention or is neutral. The DiSimones are residents of Broward County, Florida, where the state action is taking place. [R. 41, p. 7]. Nova's principal place of business is in Canada. *Id.* Nova points out that "the Note is subject to Kentucky law," and suggests, therefore, that Kentucky is the most convenient forum. [R. 42, p. 9]. Indeed, the Note states, "This Note and any other documents delivered in connection herewith and the rights and obligations of the parties hereto and thereto shall for all purposes be governed by and construed and enforced in accordance with the substantive law of the Commonwealth of Kentucky without giving effect to the principles of conflict of laws." [R. 26-8 (Promissory Note), p. 2]. And it is true that, "in the context of the *Colorado River* analysis, a party subject to a valid forum selection clause waives arguments that the forum is inconvenient." *Almetals, Inc. v. Marwood Metal Fabrication*, Civil Action No. 19-13254, 2020 U.S. Dist. LEXIS 105286, at *11 (E.D. Mich. June 17, 2020) (quoting *LMP B&B Holding, LLC v. Hannan*, No. CV 19-385, 2019 U.S. Dist. LEXIS 159205, at *6 (E.D. Pa. Sept. 16, 2019)); *see also S2 Yachts, Inc. v. ERH Marine Corp.*, No. 1:18-CV-389, 2018 WL 7858774, at *5 (W.D. Mich. Nov. 16, 2018), aff'd, 855 F. App'x 273 (6th Cir. 2021) (finding, under *Colorado River*, that "the second factor weighs against" abstention because "the parties' two agreements selected the Michigan courts as the exclusive jurisdiction for disputes" and '[t]he parties should be permitted to receive the benefit of that bargain"). But, as discussed above, the Court is not convinced the Note contains a valid forum selection clause, and a choice of law provision (which the Note does plainly contain) is not the same as a forum selection clause. *See Lakeside Surfaces*, 16 F.4th at 222 (distinguishing forum selection clauses from choice-of-law provisions); *Moses*, 929 F.2d at 1139 (same). The parties do not dispute that Kentucky law governs the Note, as contemplated by the Note's clear choice of law provision. But that does not mean, contrary to Nova's assertion otherwise, that Kentucky is the most convenient *forum* for the parties.

The convenience factor "relates to geographical considerations, and not the relative jurisdictional scope of the fora." *Wm. R. Hague, Inc. v. Sandburg*, 468 F. Supp. 2d 952, 958 (S.D. Ohio 2006) (citing *PaineWebber*, 276 F.3d at 207). And "when counsel is already engaged in litigation in another forum," as the parties are in this case, "that demonstrates that litigating in that forum is not necessarily inconvenient." *RRI Assocs.*, 2023 WL 2445589, at *4 (citation omitted). Indeed, the parties have been actively litigating in Florida for more than three years, engaging in extensive discovery and motion practice, Thus, the Court perceives no inconvenience in the Florida state forum, and, in fact, finds it is arguably more convenient for the parties than Kentucky, given that the DiSimones reside in Florida and Nova is not located in either state.

The third factor, avoidance of piecemeal litigation, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), weighs strongly in favor of abstention. "Piecemeal litigation occurs when parallel cases with overlapping claims are litigated at the same time with the possibility of inconsistent results." *RRI Assocs.*, 2023 WL 2445589, at *5 (citation omitted); *see also Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 396 (6th Cir. 2019) ("If both actions were permitted to go forward, two courts would be adjudicating the same legal issues—the classic piecemeal litigation situation."). Courts have considered the risk of piecemeal litigation "the most important factor [] to consider[.]" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colorado River*, 424 U.S. at 819).

Nova attempts to skirt this factor by folding it into the sixth factor, arguing "piecemeal litigation is avoided where Florida courts cannot protect the interests of Nova US." [R. 42, p. 10]. But for the reasons discussed below with respect to that factor, the Court disagrees. For their part, the DiSimones suggest that litigating both actions would result in piecemeal litigation because the parties in this federal action and "the other parties to the Contribution Agreement are also parties

- 23 -

to the Florida State Action," and reiterates that "the issues and claims at stake are identical." [R. 41, p. 7]. As discussed above, the DiSimones also note that "[i]n the Florida State Action, the Defendants have filed a claim against Structures U.S. for breach of the Contribution Agreement" and "have asserted a claim against VSI Sales for indemnity due to its failure to pay the obligation under the Sabre Settlement," "a claim for fraudulent inducement against VSI Sales, Structures U.S., SUSA, Nova Pole, and Nova U.S.," and "a claim for setoff based on the Promissory Note at issue herein." *Id.*

And indeed, if this Court were to decline to abstain and resolve Nova's summary judgment motion at this juncture, it would undoubtedly result in piecemeal litigation, as the Florida state court is considering the same central issues. As previously stated, the Florida federal court, in addressing the parties' cross-motions for summary judgment, opined:

> The undisputed facts show that there was some contractual relationship between Plaintiffs and Defendants regarding the release of personal guarantees as outlined in the contribution Agreement and subsequent agreements to resolve those personal guarantees. Factual questions remain as to the terms of the parties' contractual relationship and whether those terms are breached.

[R. 31-1, Ex. A (Florida Summary Judgment Order), pp. 26–27]. In other words, the court found that disputed issues of material fact remained with respect to the various contractual agreements and guarantees between the parties, contrary to Nova's argument that summary judgment is appropriate in this case.[8] And because the Florida federal court so ruled, the parties resumed litigating these issues, including the defendants' obligation to repay the Sabre Debt, the validity of the Contribution Agreement and Promissory Note, and the DiSimones' "claim that Nova U.S. fraudulently induced the Defendants to enter into the Promissory Note at issue herein," [R. 41, p.

---

[8] The Court clarifies that, at this juncture, it makes no findings on the merits of Nova's summary judgment motion or the appropriateness of summary judgment generally, and, rather, makes this point to emphasize the similarity of the issues at stake in each case and the risk of piecemeal litigation.

8], in the Florida state action. To allow this case to proceed through summary judgment and, if necessary, a trial, would undoubtedly result in the type of piecemeal litigation *Colorado River* seeks to avoid. *See CLT Logistics*, 777 F. Supp. 2d at 1061 ("[A]s *Colorado River Water* itself illustrates, the classic case of piecemeal litigation exists where the state court suit is more comprehensive than the federal suit. . . . Under such a scenario, the federal court would duplicate state-court efforts yet resolve only a 'piece' of a larger dispute, whereas the state court would resolve the entire case."); *Taylor v. Campanelli*, 29 F. Supp. 3d 972, 979 (E.D. Mich. 2014) (finding "the danger of piecemeal litigation is substantial" where "causes of action are nearly identical, the underlying facts are nearly identical, and the named Defendants are identical," making it "possible that Defendants could be subject to wholly inconsistent judgments if the state and federal cases proceed simultaneously," which "would constitute a waste of judicial resources and would undermine the credibility of the judicial system"); *Emerald Logistics*, 2008 WL 3926441, at *3 (explaining that the risk of piecemeal litigation is great where "both cases are essentially identical" and "[l]itigation on parallel tracks would thus inevitably lead to piecemeal results"). This factor therefore weighs in favor of abstention.

The fourth factor, the order in which jurisdiction was obtained, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), weighs against abstention. Nova suggests "Kentucky first assumed jurisdiction over Nova's claim on the Note when Nova filed its action in Hardin Circuit Court, and this Court assumed jurisdiction over same when Defendant's removed the action to the Western District of Kentucky" which "occurred before Defendants alleged their fraudulent inducement claim in Florida." [R. 42, p. 10]. However, this Court did not obtain jurisdiction until the DiSimones removed the action on September 8, 2020. *See* [R. 1]. Nevertheless, the Florida state court did not assume jurisdiction over the parties and their disputes until August 16, 2022,

when the plaintiffs in the Florida state action filed their second amended complaint after the Florida federal action was dismissed. *See* [R. 14-1 (Second Amended Complaint in Florida State Court)]. Nova is correct, then, that this Court obtained jurisdiction first. Even so, it is certainly consequential that the parties were litigating the Florida federal action (which, for all intents and purposes, was a precursor to the Florida state action) much earlier, and that Anthony first asserted his counterclaims against Nova and Nova Pole on September 21, 2020, only six weeks after this federal action was initiated.[9] This factor thus weighs against abstention, but only marginally.

Next considering the fifth factor, whether the source of governing law is state or federal, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), the parties agree that the only claims at issue are governed by state law. [R. 41, p. 9]; [R. 42, p. 11]. However, Nova suggests, without any supportive authority, that this factor still weighs against abstention since "Kentucky law applies because the parties agrees [sic] so in the Note." [R. 42, p. 11]. But this factor looks to the *source* of governing law (federal or state) and not the most appropriate forum (Kentucky or Florida), the latter of which this Court already addressed with respect to the second *Colorado River* factor. *See Close v. Eldo Organic, LLC*, No. 2:22-CV-1630, 2022 WL 3053751, at *6 (S.D. Ohio Aug. 2, 2022) ("The fifth factor weighs strongly in favor of abstention because the *source* of law is solely state law; *there are no federal claims asserted*.") (emphasis added). There are no federal claims at issue in this federal action or the Florida state action, and this factor therefore favors abstention.

---

[9] Again, the Court recognizes that Anthony failed to file a third-party complaint to properly bring Nova and Nova Pole into the Florida federal action, *see generally* Fed. R. Civ. P. 14, but because Nova never raised that issue to the Florida federal court, the parties have never disputed whether Nova is a proper party to either Florida action, and Nova has now been actively litigating in Florida for more than three years, this Court treats Nova as a proper party to the Florida state action.

Sixth, the adequacy of the state court action to protect the federal plaintiff's rights, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), counsels in favor of abstention. On this factor, Nova simply states: "As explained above, the State Action will not adequately protect Nova's rights because if this Court abstains it must issue a stay instead of remanding or dismissing. Further, a Court in Kentucky is better suited to adjudicate matters of Kentucky law than a Florida Court. Thus, this factor weighs in favor of the continued exercise of jurisdiction." [R. 42, p. 12]. Nova's position, however, makes no cogent arguments concerning the Florida state court's ability to protect its rights and interests, as opposed to that court's ability to fairly and accurately apply Kentucky law when necessary. And, on this point, the Court observes that the Florida federal court, in resolving the parties' cross-motions for summary judgment, had no difficulty applying Kentucky law. Moreover, as discussed above, Nova will not be without a remedy to enforce the Note if the Florida state court decides in its favor, and there is no other reason to believe Nova's rights will not be adequately protected in the Florida state action. Accordingly, this factor weighs in favor of abstention.

The seventh factor, the relative progress of the state and federal proceedings, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), weighs slightly in favor of abstention. Although Nova argues discovery "focused only on the Note" has substantially progressed in this action, it fails to acknowledge that the Florida federal action (which, again, was in essence a precursor to the state action, as the parties agreed to litigate in federal court while staying the similar Florida state action) was set for trial on February 14, 2022, before the federal court granted partial summary judgment and dismissed the remaining claims. Again, the crux of Nova's argument against abstention is that this federal litigation centers exclusively on the Note, while the Florida state action involves additional claims and issues. But the Court again must emphasize

"[t]he fact that the state action is broader than the federal is no bar to *Colorado River* abstention, because this fact can only make it more likely that it will not be necessary for the federal courts to determine the federal question." *Bates*, 122 F. App'x at 807 (citation omitted).

Moreover, since the parties filed their *Colorado River* briefs, their status reports concerning the Florida state action indicate that the case is proceeding through dispositive motion practice. *See* [R. 45]; [R. 46]. Of course, the Court recognizes that this federal action has also seen substantial progress, as discovery has concluded and Nova's motion for summary judgment is ripe for consideration. *See* [R. 25]; [R. 26]. Nevertheless, the Court agrees with the DiSimones that the Florida state action, which is, for all intents and purposes, a continuation of the Florida federal action, has also progressed substantially and will resolve threshold issues in this case. The Court therefore finds that this factor weighs in favor of abstention, but only slightly.

Eighth and finally, the parties appear to agree that the presence or absence of concurrent jurisdiction, *Walker*, 583 F. Supp. 3d at 899 (citing *Romine*, 160 F.3d at 340–41), is neutral with respect to abstention. *See* [R. 42, p. 12] ("Federal jurisdiction does not require justification, so concurrent jurisdiction over the application of state law does not necessarily weigh in favor of abstention."); [R. 41, pp. 9–10] ("This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, due to diversity of citizenship. As there is no diversity of citizenship in Florida, there is no concurrent jurisdiction between the two jurisdictions. Accordingly, this factor is neutral on the issue of abstention.").

In sum, five of the eight *Colorado River* factors favor abstention, one is neutral, and only two weigh against abstention. And although the *Colorado River* abstention doctrine should be invoked only in "narrowly limited 'special circumstances,'" this case presents the "clearest of justifications" for doing so. *Mason*, 842 F.3d at 394 (citations omitted); *see Close*, 2022 WL

3053751, at *6 (abstaining under *Colorado River* where "[o]n balance, the factors weigh in favor

of abstention"); *Intelligrated Sys., LLC v. Hy-Tek Material Handling Installation Servs.*, No. 1:21-

CV-807, 2022 WL 1423169, at *4 (S.D. Ohio May 5, 2022) (abstaining under *Colorado River*

where the "majority of the *Colorado River* factors favor abstention" and, "[m]ost significantly, the

third factor, avoidance of piecemeal litigation, is one of the driving factors in the *Colorado River*

analysis and in this case weighs heavily in favor of abstention"). For the reasons discussed above,

this federal action and the Florida state action are parallel, and the *Colorado River* factors indicate

that abstention is appropriate. *See Upward Mobility*, 784 F. App'x at 396 (affirming district court's

decision to abstain where "the only issue in the federal litigation will be decided by a state

proceeding that was filed first, is governed by state law, and is at least as far along as the federal

proceeding," because "to hold otherwise would contravene the spirit of the *Colorado River*

doctrine").

### B. Inherent Powers Stay

Notwithstanding the foregoing, the Court alternatively finds that a stay under the Court's

inherent power to manage its docket would also be appropriate here. *See Novak*, 2022 WL

3046973, at *3 (reversing and remanding district court's *Colorado River* stay but acknowledging

that doing so "does not diminish the district court's inherent power to manage its docket and stay

the resolution of discrete claims until after the state court's proceedings have come to a close");

*see also 180 Indus.*, 2018 WL 11432484, at *6 (emphasis added) (staying action even after

determining  "abstention is not proper here under *Colorado River*" because "the Court has the

inherent power to stay proceedings in the interest of judicial economy"); *Gray v. Saltalamaccia*,

No. 11-11877, 2011 WL 4737602, at *3–5 (E.D. Mich. Oct. 7, 2011) (finding *Colorado River*

abstention inappropriate but nonetheless exercising the court's inherent power to stay federal case until state court case resolved).

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (citation omitted). The Court maintains "broad discretion to stay proceedings as an incident to its power to control its own docket." *Id.* at 627 (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). In determining whether to stay a case, the Court may consider: "1) the potentiality of another case having a dispositive effect on the case to be stayed, 2) the judicial economy to be saved by waiting on a dispositive decision, 3) the public welfare, and 4) the hardship/prejudice to the party opposing the stay, given its duration." *Walker*, 520 F. Supp. 3d at 931 (internal citations omitted); *see also Attractive Surgical, LLC v. Cleveland Clinic Found.*, No. 1:19 CV 1212, 2019 WL 11075734, at *3 (N.D. Ohio Oct. 31, 2019) ("In determining whether to grant a stay, courts examine the totality of the circumstances, including the stage of the litigation, whether a stay would simplify the issues, and whether a stay would unduly prejudice the non-moving party.").

On the first factor, the same considerations discussed above with respect to parallelism signal that the Florida state action would have a dispositive effect on this case. More specifically, and in short, the sole issue of dispute in this federal action—whether the DiSimones must repay Nova pursuant to the terms of the Note—has also been raised in the Florida state action. The Florida state action, which is more comprehensive than this action, tasks that court with considering the DiSimones' claims of fraudulent inducement and setoff, as well as the validity of contractual relationships between the DiSimones and other parties to the Florida state action, to

then determine whether the DiSimones are obligated to repay Nova for the relevant portion of the Sabre Debt. In this action, which is far more narrowly tailored, Nova seeks only to enforce the Note. A threshold issue to this action therefore sits before the Florida state court: whether any indemnity agreements or other asserted defenses may relieve the DiSimones' of their obligation to repay Nova for the Sabre Debt, which serves as the basis of the Note. "'[T]he Court has the inherent power to stay proceedings pending the resolution of the same or related issues in another forum.'" *Reese on Behalf of Fifth Third Bancorp v. Carmichael*, No. 1:20-CV-886, 2021 WL 765096, at *1 (S.D. Ohio Feb. 26, 2021) (quoting *Hill v. Mitchell*, 30 F. Supp. 2d 997, 1000 (S.D. Ohio 1998)). There is no doubt, here, that the Florida state court's resolution of the parties' claims before it will have a dispositive effect on Nova's claims before this Court.

On the second factor, the Court finds that staying this case is in the interest of judicial economy, as proceeding with this action before the Florida state action resolves will result in duplicative efforts. Indeed, for the same reasons the Court finds that proceeding with both cases would result in piecemeal litigation, the Court likewise finds that doing so would result in duplicative efforts. *See Preferred Care of Delaware*, 676 F. App'x at 392 (indicating "piecemeal litigation" can "result[] in duplicative or conflicting state and federal proceedings"). Courts have even acknowledged that finding duplicative litigation is a lower hurdle than finding piecemeal litigation, which this Court has already done. *See, e.g.*, *CLT Logistics*, 777 F. Supp. 2d at 1061 (E.D. Mich. 2011) (distinguishing, in the *Colorado River* context, that "the appropriate inquiry is avoiding piecemeal litigation—not simply duplication of efforts"). In *CLT Logistics*, the court explained that the "classic case of piecemeal litigation" is when a state action is more comprehensive than a related federal action, such that the federal court would duplicate state efforts (i.e., decide the same issue), but ultimately resolve only one piece of the larger dispute. *Id.*;

*see also Williams v. Oak Park City School Dist.*, No. 06–CV–12512, 2007 WL 1063346, at *2 (E.D. Mich. Apr. 6, 2007) ("[T]hese cases do not involve true 'piecemeal litigation.' The federal and state cases involve the same plaintiff, the same defendants, and the same issue . . . Thus, this parallel litigation is duplicative, not piecemeal."); *Taylor*, 29 F. Supp. 3d at 978–79 (distinguishing between duplicative and piecemeal litigation).

If this Court were to decline to stay this action and resolve Nova's summary judgment motion at this juncture, it would unquestionably duplicate judicial efforts, as the Florida state court is considering the same central issues. Again, the parties are actively litigating the discrete issues presented to this Court, including the defendants' obligation to repay the Sabre Debt, the validity of the Contribution Agreement and Promissory Note, and the DiSimones' "claim that Nova U.S. fraudulently induced the Defendants to enter into the Promissory Note at issue herein," [R. 41, p. 8], simultaneously in the more comprehensive Florida state action. To allow this case to proceed through summary judgment and, if necessary, a trial, would undoubtedly result in duplicative efforts by the courts and the parties (as well as piecemeal litigation). *See generally Attractive Surgical*, 2019 WL 11075734, at *3 (finding inherent powers stay appropriate where the "outcome of [a related] declaratory judgment action [in California federal court] will greatly simplify the issues and perhaps eliminate the need for further proceedings in [Ohio federal] court"); *Poffenbarger v. Kendall*, No. 3:22-CV-1, 2022 WL 7180295, at *3 (S.D. Ohio Sept. 2, 2022) (staying action "[i]n the interest of judicial economy and avoiding potentially duplicative litigation and conflicting results" pending "final resolution of whether [related purported class action] will proceed as a class action that includes [plaintiff] as a member of its certified class").

On the third factor, consideration of the public welfare, the Court perceives no reason the public or any third party would be harmed by a stay of this action. "Though swift resolution is

generally considered in the public welfare, a short delay to streamline the case and its claims will save judicial economy and legal resources." *Richard C. Poe, II, et al. v. FCA US LLC*, No. 2:21-CV-11668-TGB-CI, 2023 WL 9112208, at *2 (E.D. Mich. Dec. 5, 2023). Lastly on this point, because the Florida state action is at the dispositive motion stage, it should, in theory, soon conclude. A stay of this federal action, therefore, would not be unduly lengthy. *See generally Dowler v. Med. Shoppe*, No. 2:07 CV 848, 2007 WL 2907519, at *2 (S.D. Ohio Oct. 3, 2007) (staying action pending transfer decision by Judicial Panel on Multidistrict Litigation and noting, "[i]t appears the decision as to whether the case will be transferred is expected rather quickly and therefore there will be no harm in not ruling on Plaintiffs pending motions until after").

Finally, on the fourth factor, although Nova opposes a stay under *Colorado River* and, presumably, under the Court's inherent power as well, Nova has pointed to no concrete harm or prejudice that would result from a stay. Again, with respect to the state court's ability to adequately protect Nova's rights, Nova simply positioned, "a Court in Kentucky is better suited to adjudicate matters of Kentucky law than a Florida Court." [R. 42, p. 12]. But, again, there is no reason to believe the Florida state court cannot fairly and accurately apply Kentucky law when necessary. In addition, although Nova suggests the Florida state court cannot adequately protect its interests because its claim for enforcement of the Note is only before this Court, as previously stated, Nova will not be without a remedy to enforce the Note if the Florida state court decides in its favor. Put simply, there is little, if any, reason to believe Nova would suffer harm or prejudice by this Court issuing a stay. *See In re S. Shore Lake Erie Assets & Operations, LLC*, No. 1:21-CV-02343, 2022 WL 4229422, at *1 (N.D. Ohio Aug. 3, 2022) (granting inherent powers stay and finding "it is in both the parties' and the Court's interest for [related federal action deciding threshold issue] to be

first resolved" before moving forward with action before it). And as already noted, the Court does not expect the stay of this case to be unduly lengthy.

Accordingly, the Court finds that, although a stay under *Colorado River* is appropriate under the circumstances of this case, a stay under the Court's inherent power to manage its docket would alternatively be appropriate.

### III. CONCLUSION

For all the reasons set forth above, this matter is **STAYED** pending resolution of the Florida state action.

**IT IS SO ORDERED.**

This the 1st day of February, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of record

- 34 -